## COMMONWEALTH vs. MARK E. CAREY.

No. 87-1158.

Worcester. June 2, 1988. — August 22, 1988.

Present: DREBEN, KASS, & FINE, JJ.

*Motor Vehicle,* Operating under the influence. *Evidence,* Videotape, Intoxication, Admissions and confessions, Right to obtain evidence. *Constitutional Law,* Admissions and confessions. *Arrest.*

There is no constitutional impediment to recording a suspect's repeat performance of field sobriety tests before a video camera at a police station after his arrest. [340-341]

A defendant was not so inebriated at the time of his booking as to negate the voluntariness of his incriminating statements to the arresting police officer, made after receiving Miranda warnings; a videotape recording of the booking procedure that depicted the defendant making the statements was properly admitted in evidence. [341-342]

There was no violation of a criminal defendant's rights under G. L. c. 276, § 33A, where he was allowed to place a telephone call to his mother, as he requested, at the completion of the booking procedure after his arrest, and within the one-hour period fixed by the statute. [342-343]

The fact that a criminal defendant under arrest was given notice of his right under G. L. c. 263, § 5A, to be examined by a physician of his choice, by the booking officer at a police station rather than the officer "in charge" as denoted by the statute, did not provide grounds for dismissal of a complaint for driving while under the influence of liquor or for suppression of a videotape made during booking. [343-344]

COMPLAINT received and sworn to in the Westborough Division of the District Court Department on October 28, 1985.

In the jury session of the Worcester Division, a pretrial motion to suppress evidence was heard by *Elliott L. Zide*, J., and the case was tried before him.

*Andrew L. Mandell* for the defendant.

*Katherine E. McMahon*, Assistant District Attorney, for the Commonwealth.

KASS, J. As proof of its charge of driving while under the influence of intoxicating liquor, the Commonwealth, in addition to testimony of the arresting officer, offered a videotape recording made when the defendant was booked at the police station. The playback of the tape to a jury of six (we have viewed the tape) was powerful evidence that the defendant's faculties were impaired by drink. Before trial the defense moved to suppress the videotape and during trial the defense moved to exclude certain portions of the videotape. The appeal centers on the denial of those motions.[1]

"Videotapes are 'on balance, a reliable evidentiary resource. . . .' *Commonwealth* v. *Harvey*, 397 Mass. 351, 359 (1986)." *Commonwealth* v. *Cameron*, 25 Mass. App. Ct. 538, 548 (1988). When relevant, videotapes have the virtue of presenting an accurate, vivid, and fair representation of the way people acted or spoke or how things looked when the tape was recorded. See *Commonwealth* v. *Mahoney*, 400 Mass. 524, 527 (1987); *Commonwealth* v. *Cameron, supra* at 548. Appropriate use of videotapes as evidence includes the videotape record of the booking of a defendant. *Commonwealth* v. *Mahoney, supra* at 526.

1. *Taping of field sobriety tests.* Among the objections which the defendant made to the use of the videotape is that it contained a decidedly inculpatory filming of him performing sobriety tests which he had previously failed in the field. Making him do the tests a second time before a camera, the defendant complains, deprived him of his constitutional rights against self-incrimination. Performance of field sobriety tests does not implicate the Fifth Amendment to the Constitution of the United States because it involves no "testimonial evidence" in the sense that phrase is understood. *Commonwealth* v. *Brennan*, 386 Mass. 772, 778-779 (1982). As is the case with fingerprinting, photographing, measuring, or asking a suspect to stand, walk, or talk, a sobriety test requires the suspect to permit himself to be observed; it does not ask the suspect to reveal

---

[1] In some respects the tape, as played to the jury, was sanitized by the judge. The record does not disclose what was deleted.

his mind. *Id.* at 779. See also *Commonwealth* v. *Mahoney*, 400 Mass. at 528.

Sobriety tests in the field, i.e., when the suspect is first stopped, have the obvious merit of enabling the investigating police officer to decide whether there is good reason to think the suspect influenced by drink. It is difficult to think of a constitutional impediment to having the suspect do the test again at the police station before a camera so that there may be a reliable record of what the officer saw. The actual picture should be better than the officer's word picture. Repeat tests excited no comment in *Commonwealth* v. *Stathopoulos*, 401 Mass. 453, 454 (1988) (five separate sobriety tests, two at the scene of the arrest and three at the Lower Basin station).

In other jurisdictions videotaping a defendant performing sobriety exercises appears to be a routine practice. See *Annas* v. *Alaska*, 726 P.2d 552, 554 (Alaska Ct. App. 1986); *State* v. *Mannion*, 414 N.W.2d 119, 120 (Iowa 1987); *State* v. *St. Amant*, 504 So.2d 1094, 1095-1096 (La. Ct. App. 1987); *State* v. *Breeden*, 374 N.W.2d 560, 561 (Minn. Ct. App. 1985); *State* v. *Ryan*, 744 P.2d 1242, 1243 (Mont. 1987); *State* v. *Strickland*, 276 N.C. 253, 261 (1970); *Delgado* v. *Texas*, 691 S.W.2d 722 (Tex. Ct. App. 1985); *State* v. *Haefer*, 110 Wis.2d 381, 383 (Ct. App. 1982).

2. *Testimonial component of the videotape.* While booking the defendant, the arresting officer, Richard McDevitt, after inquiring about name, address, occupation, medical problems and so forth, also put two questions which broached on the offense. First question: "Mr. Carey, where were you drinking and for how long?" To that the defendant answered, "I just went down the Do-Drop and I had a couple beers. ... ." Second question: "How long were you there for, do you know?" To that the defendant answered, "An hour maybe . . . Like, I figured, well, shit, I'm close to home, you know, just right down the road." Those questions and the answers to them involved "knowledge or thoughts" of the defendant. Compare *Commonwealth* v. *Mahoney*, 400 Mass. at 528.

Had the defendant not received the Miranda warnings,[2] the defendant's statements about where, what, and why he had been drinking should have been pruned from the videotape. The booking officer (who was the same man as the arresting officer) did, however, give the Miranda warnings, inquired of the defendant if he understood, and received the response, "Yes, I do."

The trial judge viewed the tape and found that the defendant "clearly understood his Miranda rights." The judge further found that the "statements against [the defendant's] interest were made completely voluntarily and completely spontaneously and not as a result of any direction, insistence, or specific questioning by the Commonwealth." There were, of course, questions by the police, but the judge is correct that the questions did not press for information about what, how much, and why the defendant was drinking. Findings by the trial judge about voluntariness are entitled to considerable deference. *Commonwealth* v. *Silva*, 388 Mass. 495, 501-502 (1983). *Commonwealth* v. *Doucette*, 391 Mass. 443, 447 (1984). We have seen the videotape and think the judge's finding of voluntariness a reasonable — if not compelled — determination. Carey's inebriated condition was insufficient to negate the voluntariness of his act. *Commonwealth* v. *Doucette*, 391 Mass. at 448. *Commonwealth* v. *Shipps*, 399 Mass. 820, 826 (1987).

3. *Right to communicate with family, friends, or counsel.* At the very beginning of the booking process, the defendant asked to talk to his mother and he repeated that request several times as the booking proceeded. After reading the charges to the defendant, Officer McDevitt informed him of his rights: the Miranda rights; the right to be examined by a physician selected by the defendant at the defendant's own expense (G. L. c. 263, § 5); and the right to use the telephone (G. L. c. 276, § 33A). In response to the defendant's several requests to call his mother, Officer McDevitt told the defendant he would be allowed to do so when the booking was completed.

---

[2] *Miranda* v. *Arizona*, 384 U.S. 436 (1966). See also *Commonwealth* v. *Adams*, 389 Mass. 265, 268 (1983).

Under G. L. c. 276, § 33A, as amended through St. 1963, c. 212, a person held at a police station "shall be informed forthwith upon his arrival . . . of his right to . . . use the telephone [to communicate with family, friends, a lawyer, or arrange for bail], and such use shall be permitted within one hour thereafter." Carey urges that the spirit of the statute was violated when he was denied the use of the telephone until after the booking process.

Notice of the right to use the telephone must be given "forthwith upon . . . arrival," i.e., as soon as may be, or as was said in *Commonwealth* v. *Bouchard*, 347 Mass. 418, 420 (1964), "due diligence shall be used to inform the arrested person with reasonable promptness." Here the police officer made the required announcement almost at once. There was certainly no undue delay in informing the defendant of his right to telephone. Cf. *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 266 (1982). What Carey complains about is the delay in allowing him to use the telephone. He was denied use of the telephone until after the inculpatory videotape had been made. The concluding clause of G. L. c. 276, § 33A, however, provides a safe harbor to the police. They must permit use of the telephone within one hour of when the person in custody arrives at the police station. Here the defendant was allowed the use of the telephone well within that time limit. The booking consumed fifteen minutes at the outside. Had the police interfered with communication with a lawyer, and thereafter interrogated the defendant beyond routine name, address, age, and medical problems information (see discussion under point 2, *supra*), the case might have a different cast. Compare *Commonwealth* v. *Mahnke*, 368 Mass. 662, 692 (1975). Communication with family is not on the same footing, as explained in *Commonwealth* v. *Bradshaw*, 385 Mass. at 264.

4. *Notice under G. L. c. 263, § 5A.* Information that a person charged with driving under the influence of alcohol has the right to be examined by a physician of his choice is, under the statute, to be dispensed by "[t]he police official in charge of [the] station . . . or his designee." G. L. c. 263, § 5A, as amended through St. 1983, c. 557. The defendant offered as

a further ground to suppress the videotape (and on appeal for dismissal of the complaint) that he received his § 5A notice from the booking officer, not the officer "in charge." The 1983 amendment to § 5A added that the notice might also be given by the designee of the official in charge, perhaps in order to deal with precisely so hypertechnical an argument as the defendant is making. Even assuming, and we do not so decide, that Officer McDevitt had not been designated to give a § 5A notice, the failing would not rise to anything resembling a failure to give the necessary warning entirely, and, therefore, would not require suppression or dismissal. The important point is that the defendant was informed of the right to be examined by a physcian of his choice. Contrast *Commonwealth v. Andrade*, 389 Mass. 874, 875-877 (1983); *Commonwealth v. Upton*, 394 Mass. 363, 367 n.4 (1985).

*Judgment affirmed.*