## COMMONWEALTH *vs.* DONALD R. MAYLOTT.

No. 96-P-438.

Hampshire. June 25, 1997. - September 16, 1997.

Present: KASS, SMITH, & LAURENCE, JJ.

*Arrest. Practice, Criminal,* Dismissal, Failure to make objection. *Evidence,* Videotape. *Bail.*

Dismissal of a criminal complaint is not the remedy for police officers' alleged depriving the defendant of his right to make a telephone call while in custody after his arrest. [519]

At the trial of a complaint for operating a motor vehicle while under the influence of intoxicating liquor, there was no substantial risk of a miscarriage of justice in the admission in evidence of a videotape of the defendant taken at the time the police were attempting to book him which was relevant to the defendant's appearance and behavior at the time, as placed in issue during the trial. [519]

A defendant under arrest and in custody is not entitled to a bail hearing until booking procedures are completed and, where such a defendant refused to answer the booking questions, police properly placed the defendant in a cell without a bail hearing until he was ready to cooperate. [520-521]

COMPLAINT received and sworn to in the Northampton Division of the District Court Department on December 24, 1993.

On appeal to the jury session of that division, a pretrial motion to dismiss was heard by *W. Michael Ryan,* J., and the case was heard by him.

*Edward E. Eliot* for the defendant.

*Cynthia M. Pepyne,* Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendant was the subject of a complaint charging him with operating a motor vehicle while under the influence of intoxicating liquor (second offense). Prior to trial, the defendant filed a motion to dismiss the complaint and a motion in limine to exclude evidence of a videotape taken at the time the police were attempting to book him. The judge denied the

motions, and the defendant was found guilty at a jury-waived trial. On appeal, the defendant challenges the denial of his motion to dismiss and his motion in limine.

The defendant's motion to dismiss the complaint was based on what the defendant labeled as "egregious conduct" by the police at the police station after his arrest. The parties submitted a statement of agreed facts as to what occurred at the booking desk. Before reciting those facts, we summarize the evidence concerning the defendant's arrest and his subsequent arrival at the police station.

Around midnight on December 23, 1993, a South Hadley police officer was traveling on Route 116, a two-lane road in that town. He observed a vehicle in front of him, without a tail light, weaving from side to side, and exceeding the posted speed limit of twenty-five miles per hour. The vehicle made a right turn onto Route 202, a marked road with a posted speed limit of forty miles per hour. The vehicle was clocked at fifty-five to sixty miles per hour. Twice, the vehicle crossed the center lane and the operator had to veer sharply to return to the proper lane. The officer stopped the vehicle which was being operated by the defendant. The officer detected a strong odor of alcohol, the defendant's eyes were glassy and his speech was slurred. The defendant was given field sobriety tests and failed them. He was arrested and brought to the police station at approximately 12:30 A.M.

We now refer to the statement of agreed facts as to what occurred at the booking desk. We summarize those facts and quote relevant portions.

Upon the defendant's arrival at the police station, the booking officer proceeded to read to the defendant his rights, including his Miranda rights, his right to use the telephone pursuant to G. L. c. 276, § 33A, his right to have a breathalyzer test, and his right to an independent medical examamination pursuant to G. L. c. 263, § 5A.[1]

The officer then started the booking procedure by asking the defendant a series of biographical questions. The defendant gave his name and address and then "refused to answer any

[1]The statement of agreed facts specifically states that the defendant was told of his right to an independent medical examination pursuant to G. L. c. 263, § 5A. The statement is somewhat different from the transcript of the videotape. In any event, the defendant never requested a medical examination nor did the police request that he take a breathalyzer test.

further questions, in a loud and argumentative manner." The officer then told the defendant that he was terminating the booking procedure and that he was going to place the defendant in a cell until he was ready to cooperate and answer the booking questions.

The defendant insisted, "loudly and repeatedly, that he wanted to use the telephone." The officer refused to allow the defendant to use the telephone until he answered the booking questions. When the defendant refused to answer the booking questions, he was placed in a cell.[2]

The booking officer then contacted a bail magistrate. When the bail magistrate was informed that the defendant had refused to answer the booking questions, he told the officer that the defendant should be held until court convened.

The defendant remained in his cell until approximately 8:00 A.M. when he was transported to court. While in his cell, he was not given the opportunity to make a telephone call or take a breathalyzer test. According to the statement of agreed facts, he was not informed of the telephone call made by the police to the bail magistrate, and he was not given an opportunity to speak with the bail magistrate or "told that he would not be released unless he . . . [answered] the booking questions."[3] Based on these facts, the judge denied the defendant's motion.

On appeal, the defendant claims that his motion to dismiss the complaint should have been allowed because, by placing him in a cell for refusing to answer the booking questions, the police denied him his right to make a telephone call, to take a breathalyzer test, and to have a prompt bail hearing. The Commonwealth responds that the police had the right to require the defendant to complete the booking procedure before he could avail himself of his statutory rights. We agree with the Commonwealth and hold, in the circumstances present here, the judge did not commit error in denying the defendant's dismissal motion.

---

[2] The entire exchange between the booking officer and the defendant was videotaped. The videotape was introduced at trial and covered eight pages of transcript.

[3] The statement of agreed facts contains conflicting statements as to whether the defendant was told his release from the jail cell was contingent upon his agreement to cooperate and answer the booking questions. However, the transcript (see note 2, *supra*) reveals that he was, in fact, told that he would be placed in a cell until he was ready to cooperate and answer the booking questions.

1. *Denial of right to make a telephone call.* General Laws c. 276, § 33A, as inserted by St. 1963, c. 212, states that a person held at a police station "shall be informed forthwith upon his arrival . . . of his right to . . . use the telephone [to communicate with family, friends, a lawyer, or arrange for bail], and such use shall be permitted within one hour thereafter." *Commonwealth* v. *Carey,* 26 Mass. App. Ct. 339, 343 (1988). Even if we assume that the police did intentionally deprive the defendant of his right to make a telephone call, that violation does not call for dismissal of the complaint but rather "the suppression of unfavorable evidence obtained as the result of denying the defendant's right." *Commonwealth* v. *Kelley,* 404 Mass. 459, 463 (1989). *Commonwealth* v. *Johnson,* 422 Mass. 420, 429 (1996). Therefore, the judge properly denied the defendant's motion to dismiss the complaint.

2. *Introduction of videotape in evidence.* The defendant did not file any motion to suppress the evidence obtained as a result of what he labels the "egregious conduct" of the police, nor does he argue on appeal that any unfavorable evidence, such as the booking officer's observations, should be suppressed. Rather, his sole claim is that his motion in limine to exclude the videotape was incorrectly denied. However, after his motion in limine was denied, he failed to object to its introduction in evidence at the trial. Therefore, he has waived his appellate rights and "our review is limited to a determination whether the alleged errors created a substantial risk of a miscarriage of justice." *Commonwealth* v. *Gabbidon,* 398 Mass. 1, 7 (1986).

The defendant argues that the videotape should have been excluded because his statements made during the taping incriminated him since they "revealed a lack of cooperation with booking that may have been caused by alcohol consumption." Given the defense at trial that at the time he was arrested the defendant was not intoxicated but tired and beset by physical injuries, and had beer sprayed on him by a faulty keg in a pub where he was working, the videotape was relevant to show the defendant's appearance and behavior. None of the questions asked of the defendant on the videotape was propounded to incriminate him, nor did the substance of any response incriminate the defendant. There was no error in the introduction in evidence of the videotape.

3. *The bail hearing matter.* The booking procedure plays an important role in regard to the right of the arrestee to be given a bail hearing and to be released on bail or personal recognizance.[4] Its primary purpose is to identify the arrestee. This is accomplished by asking routine questions "such as the defendant's height, weight, address, date of birth and current age." *Commonwealth* v. *White*, 422 Mass. 487, 501 (1996). From the arrestee's answers to the questions, the booking officer is able to identify the arrestee's status in the criminal justice system so that the police may ascertain whether there are any arrest warrants or restraining orders outstanding against the arrestee. This information is particularly important to the bail magistrate who must make the determination whether to release the arrestee on personal recognizance. See G. L. c. 276, § 58.[5] We repeat what we stated in *Commonwealth* v. *Whitcomb*, 37 Mass. App. Ct. 929, 930 (1994), that is, "[u]ntil the booking procedures [are] completed, we hold that the defendant [is] not entitled to a bail hearing." Of course, the police cannot unreasonably postpone or unduly prolong the booking procedure in order to prevent the arrestee from having a bail hearing. That was not the case here;

---

[4] See LaFave, Search and Seizure § 5.1(e) (3d ed. 1996), and Whalen, Comment, The Role of "Booking" in the Administration of Justice, 1963 U. Ill. L.F. 685, which describes the booking procedure as follows:

> "Booking ordinarily involves a number of different tasks of a predominantly clerical nature, all of which are usually performed immediately or soon after the individual under arrest has been delivered to the police station. An arrest report is completed that may later be posted to the arrestee's permanent police record. Fingerprinting and photographs may be required by the circumstances of the case, by police regulations, or by statute. An entry on the police 'blotter' or arrest book is made indicating the name of the arrestee, the personal effects in his possession, the date, time and place of the arrest, the reason for the arrest, and whether the arrestee is to be further investigated before a warrant is sought. Later developments, such as formal charging, release, etc., are likely to be entered into this record so as to keep it current."

[5] The booking procedure is also important to the arrestee because the creation of a public record of the arrestee's detention allows "his family, friends and attorney . . . to determine his whereabouts with relatively little difficulty." Whalen, Comment, The Role of "Booking" in the Administration of Justice, 1963 U. Ill. L.F. 685, 689. "Moreover, the very fact that the record of his arrest has been made may serve as a check on some abusive action" by the police. *Ibid.*

rather it was the defendant's own egregious conduct that prevented him from having a bail hearing.

*Judgment affirmed.*