COMMONWEALTH *vs.* RONALD M. GONSALVES. No. 07-P-2003. June 5, 2009.
*Motor Vehicle,* Operating under the influence. *Evidence,* Prior conviction,
Admission by silence.

The defendant appeals from his conviction of operating under the influence
(OUI), fourth offense, in violation of G. L. c. 90, § 24.

1. *Erroneous admission of prior OUI convictions.* Neither the parties nor
the judge intended that evidence of the defendant's prior OUI convictions
reach the jury as part of the first phase of this bifurcated trial; however, the
jury learned of them when a copy of a medical subpoena was inadvertently
included in an exhibit intended only to contain the defendant's medical rec-
ords.[1] The subpoena showed that the defendant was being charged with "OUI-
Liquor/.08, 4th offense."

The jury took note, and during deliberations sent a note to the judge asking:
"Is the indication on the evidence sheet that this is the defendant's fourth
offense?" Defense counsel moved for a mistrial, which the judge denied, elect-
ing instead to remove the subpoena, give a curative instruction, and order the
jurors to resume deliberations.[2] The curative instruction did not directly answer
the jury's question but informed them that the prior convictions were not in
evidence and that they should limit themselves to the evidence. The defendant
lodged no objection to the curative instruction. Approximately five minutes
later, the jury returned a guilty verdict.

In a bifurcated trial, the jury are not to know of the defendant's prior OUI
convictions. G. L. c. 278, § 11A. *Commonwealth* v. *Williams,* 19 Mass. App.
Ct. 915, 916 (1984). Although the error here may have been palliated somewhat
by the judge's curative instruction, the fact that the jury focused on the
information, and the timing of the verdict, leave us unconvinced that no harm
resulted. When taken together with the erroneous admission of the defendant's
postarrest silence, see discussion, *infra,* the combination of errors created a
substantial risk of a miscarriage of justice such that reversal is required. *Com-
monwealth* v. *Whitlock,* 39 Mass. App. Ct. 514, 517-518 (1995) (violation of
G. L. c. 278, § 11A, taken in combination with other error, resulted in sub-
stantial miscarriage of justice).

2. *Postarrest refusal to answer questions.* On direct examination, the prosecu-
tor elicited testimony from two State troopers regarding the defendant's
refusal to answer questions during the booking process. Three references to
the defendant's refusal to answer questions were elicited: in one, one of the
troopers testified that the defendant "wasn't going to answer any questions until
he talked to a lawyer"; in the other two, the troopers stated that the defendant
refused to answer questions, including booking questions. Objections were
lodged twice, both times belatedly.[3] Although in closing argument the prosecu-

---

[1]While the record is not entirely clear, the mistake appears to have been the collec-
tive oversight of the defense attorney, the prosecutor, and the judge.

[2]Defense counsel objected to the denial of his request for a mistrial. In addition, after
the verdict was returned, defense counsel requested that the jury be polled, arguing that
the timing of the verdict showed that the curative instruction had been ineffective. The
judge denied the request.

[3]Because the defendant objected late and requested no curative instruction, we review
to determine whether the error resulted in a substantial risk of a miscarriage of justice,
*Commonwealth* v. *Bradford,* 52 Mass. App. Ct. 220, 220 n.1 (2001).

tor argued that the defendant's belligerent and uncooperative behavior at the station was evidence of his intoxication (and the defendant's refusal to answer questions was part of the description of that behavior), the prosecutor did not specifically mention the defendant's silence.

The defendant's silence occurred at the time of booking, postarrest. The defendant had been handcuffed and taken into custody before being taken to the barracks where the booking questions were asked. A defendant's postarrest silence in response to police questioning may not be used against him. *Commonwealth* v. *Andujar*, 57 Mass. App. Ct. 529, 536 (2003). The fact that the defendant's silence was in connection with booking questions makes no difference. See, e.g., *Commonwealth* v. *Adams*, 434 Mass. 805, 811-812 (2001) (introduction of defendant's refusal to answer booking questions, among other references to his silence, "would be impermissible . . . as evidence of guilt"); *Commonwealth* v. *Ayre*, 31 Mass. App. Ct. 17, 23 (1991) (testimony and closing statement directly referencing defendant's refusal to cooperate during booking was "improper"); *Commonwealth* v. *Wei H. Ye*, 52 Mass. App. Ct. 390, 396 (2001) (testimony regarding defendant's refusal to answer booking questions "raised constitutional issues that were avoidable").

While booking questions are ordinarily not designed to elicit incriminating answers and are necessary for the commencement of the bail process, see *Commonwealth* v. *Maylott*, 43 Mass. App. Ct. 516, 520 (1997), a defendant's refusal to answer a booking question is no less ambiguous than a failure to give an exculpatory explanation. A defendant's refusal to answer a booking question may be nothing more than an attempt to invoke a Miranda right, even where *Miranda* v. *Arizona*, 384 U.S. 436, 475-476 (1966), would not technically exclude an answer. Cf. *Commonwealth* v. *Thompson*, 431 Mass. 108, 116-117, cert. denied, 531 U.S. 864 (2000) (defendant's silence in response to police questioning should not have been admitted, even where defendant not in custody at time of questioning). For these reasons, the defendant's refusal to answer booking questions and his reference to wanting a lawyer were irrelevant and inadmissible; "[e]vidence which is not relevant is not admissible." Mass. G. Evid. § 402 (2008-2009 ed.)

3. *Proof of prior offenses.* Because the defendant may be retried, we address his arguments concerning the evidence of his prior convictions. For the reasons that follow, we conclude that there was no error.

The defendant argues that there was insufficient evidence to tie him to the prior convictions, that the evidence of his prior convictions did not consist of "certified attested copies" as required by G. L. c. 90, § 24(4), as appearing in St. 2005, c. 122, § 6A,[4] and that the admission, without a live witness whom he could cross-examine, of documents showing his prior convictions violated his right to confrontation under the United States Constitution.[5]

General Laws c. 90, § 24(4), provides that "certified attested copies of

---

[4]As observed in *Commonwealth* v. *Maloney*, 447 Mass. 577, 584-585 (2006), the Legislature intended to amend G. L. c. 90, § 24(4), in 2005 but, due to a clerical error, mislabeled the amended section as 24(1)(*c*)(4). Our citation to G. L. c. 90, § 24(4), refers to the version amended in 2005.

[5]The last of these arguments is controlled by *Commonwealth* v. *Maloney*, 447 Mass. at 591-592, in which the Supreme Judicial Court held that proof of prior convictions admitted under G. L. c. 90, § 24(4), does not offend the confrontation clause of the United States Constitution. Here, proof of the defendant's prior convictions came from

original court papers, or certified attested copies of the defendant's biographical and informational data from records of the department of probation," are prima facie evidence of prior convictions and need not be admitted through a live witness. Under the statute, such documents are self-authenticating and admissible to prove the defendant's prior convictions without corroborating evidence or live testimony. G. L. c. 90, § 24(4). While "identity of name" alone is insufficient to show that the convictions are those of the defendant, when the documents "include more identifying information than merely the offender's name, . . . this requirement will be met." *Commonwealth* v. *Maloney*, 447 Mass. 577, 588 (2006). See *Commonwealth* v. *Dussault*, 71 Mass. App. Ct. 542, 546 (2008).

The conviction records here satisfied the Commonwealth's burden.[6] The booking officer testified as to the defendant's name (including middle initial), date of birth, and address. The court docket sheet supporting the first conviction sets forth the same name (including middle initial), date of birth (day and year),[7] and address. The court docket sheet supporting the second conviction sets forth the same name (not including the middle initial) and date of birth. The court docket sheet supporting the third conviction sets forth the same name (including the middle initial) and date of birth. The probation record supporting the second and third convictions, which contains docket numbers and other information corresponding to the court's records for the second and third convictions, sets forth the same name (not including middle initial), date of birth, and address. Each document contains an attestation and a signature by the clerk or probation officer-in-charge (on the form itself or in a separate certification).

The judgment is reversed and the verdict is set aside.

*So ordered.*

*Karen Augeri Benson* for the defendant.
*Gail M. McKenna*, Assistant District Attorney, for the Commonwealth.

court dockets which, by their nature, are not testimonial for purposes of a confrontation clause analysis. See *Crawford* v. *Washington*, 541 U.S. 36, 68 (2004) (giving examples of type of statements that are testimonial for this purpose).

[6]We review the defendant's claim of insufficient evidence by viewing the evidence in the light most favorable to the Commonwealth in order to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), quoting from *Jackson* v. *Virginia*, 443 U.S. 307, 318-319 (1979).

[7]The binding of the defendant's record appendix cut off the month of the defendant's date of birth.