Commonwealth *vs.* Michael Harris.

No. 07-P-1496.

Hampden. June 2, 2009. - November 5, 2009.

Present: Cypher, McHugh, & Milkey, JJ.

Further appellate review granted, 455 Mass. 1108 (2010).

*Constitutional Law,* Admissions and confessions, Indictment, Confrontation of witnesses, Burden of proof. *Practice, Criminal,* Presumptions and burden of proof, Admissions and confessions, Voluntariness of confession, Indictment, Nolle prosequi, Loss of evidence by prosecutor, Confrontation of witnesses, District attorney. *Evidence,* Admissions and confessions, Voluntariness of statement, Certificate of drug analysis, Chain of custody. *Controlled Substances.*

At a criminal trial in which the judge ruled that the defendant's inculpatory statement to the police at the scene should be suppressed because there was no evidence that the defendant received Miranda warnings, voluntarily waived his rights, or consented to talk to the police, the judge properly ruled admissible the defendant's second, written statement to different police personnel, made two hours later at the police station after the police gave the defendant Miranda warnings, where sufficient time had elapsed between the two statements and there had been a sufficient break in the course of events to allow the conclusion that the taint from the first statement had been dissipated. [698-701]

A criminal defendant failed to demonstrate that the police intentionally deprived him of his right to use the telephone under G. L. c. 276, § 33A. [701-702] Milkey, J., concurring.

At the trial of indictments charging the defendant with, inter alia, trafficking in cocaine and unlawful distribution of cocaine as a second offense, the Commonwealth's entry of a nolle prosequi on the subsequent offender portion of the distribution charge after a guilty finding on the underlying offense did not effect an acquittal of the entire indictment. [702-704]

A criminal defendant failed to demonstrate any prejudice resulting from the prosecution's alleged loss of material evidence that was favorable to him. [704]

At the trial of indictments charging the defendant with, inter alia, trafficking in cocaine and unlawful distribution of cocaine, the introduction in evidence of certificates of analysis without the testimony of an analyst from the State police laboratory did not give rise to a substantial risk of a miscarriage of justice, in light of the uncontroverted evidence that the defendant was engaged in the drug trade. [705-707]

Indictments found and returned in the Superior Court Department on August 2, 2005.

A pretrial motion to suppress evidence was heard by *Jeffrey A. Locke, J.*, and the cases were heard by *Tina S. Page, J.*

*Cathryn A. Neaves* for the defendant.

*Dianne M. Dillon*, Assistant District Attorney, for the Commonwealth.

CYPHER, J. The defendant, Michael Harris, appeals from the judgments entered after a jury-waived trial in the Superior Court in May, 2006. He was found guilty of trafficking in cocaine with a weight of twenty-eight grams or more, but less than one hundred grams, G. L. c. 94C, § 32E(*b*)(2); unlawful distribution of cocaine, G. L. c. 94C, § 32A(*c*); and resisting arrest, G. L. c. 268, § 32B.[1] We affirm the convictions.

*Background.* We summarize the facts the judge could have found, reserving more details where relevant to our discussion of the issues. Springfield police and an undercover State trooper conducted a controlled purchase of cocaine from the defendant outside an apartment building on Franklin Street in Springfield on June 3, 2005. The trooper arranged, by telephone, to meet the defendant, drove up to the apartment building, and parked. When the defendant emerged from the apartment building, showing the trooper packages of cocaine called "twenties," the trooper said instead he wanted two "eight balls" of cocaine. The defendant returned to the apartment building and emerged a few minutes later with a baggie containing the "eight balls." After the exchange of money and the cocaine, the defendant became aware of police closing in and fled, hiding in the shrubbery of a nearby church. He soon was found, taken into custody, and returned to Franklin Street, where the police were securing apartment 3 of the apartment building. Here, the defendant made a statement that was later ordered suppressed after a pretrial hearing.

The defendant was taken to the police station where, after having been given Miranda warnings, he made a written statement. In that statement the defendant sought to exonerate his cousin, with whom he had been staying in the apartment, by acknowledging that he knew about the cocaine because it was his, that his cousin "had nothing to do with it," and that he had sold cocaine from the apartment earlier that night. Advised

---

[1]The defendant was found not guilty of a charge of violating the substance control law within 1,000 feet of a public park or playground, G. L. c. 94C, § 32J.

of his right to use a telephone, the defendant was told that he could use one during the booking process because there was no telephone in the interview room. During this time and after having obtained a search warrant, the police conducted a search of apartment 3, accompanied by a drug-sniffing dog, and discovered a large block of cocaine. The motion judge denied the defendant's motion to suppress this second statement and the cocaine.

On appeal, the defendant argues that (1) the second statement he made to the police should have been suppressed because it was tainted by his first statement and because the police violated his right to use a telephone; (2) the Commonwealth's entry after trial of a nolle prosequi on the subsequent offender portion of the distribution charge effected an acquittal of the entire indictment because the defendant was indicted on a distribution of cocaine charge as a subsequent offender; (3) his conviction violated his right to due process where the police lost material evidence that was favorable to him; and (4) his conviction on the distribution charge violated his right to a grand jury indictment and to confront witnesses against him. Arising from that last argument, the defendant claims that the recent decision of the United States Supreme Court in *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527, 2532 (2009), entitles him to a reversal of his convictions.

*Discussion.* 1. *Alleged tainted second statement and use of telephone.* The defendant argues that the second statement, which he made at the police station, was tainted by the first statement, was made involuntarily, and should have been suppressed. As an additional ground to suppress the second statement, he claims that the police intentionally deprived him of the use of a telephone before he made the statement. Based on the admissibility of his second statement, the defendant seeks a reversal of his trafficking conviction.

There is no dispute that the motion judge properly allowed the motion to suppress the first statement made by the defendant, shortly after he had been apprehended and returned to the scene. There was no evidence that the defendant received Miranda warnings, voluntarily waived those rights, or consented to talk to the police. See *Commonwealth* v. *Martin*, 444 Mass. 213, 218 (2005).

The motion judge found very different circumstances leading

to the defendant's statement at the police station. The motion judge determined that the defendant validly waived his Miranda rights after he was carefully informed of those rights, as well as the right to use a telephone under G. L. c. 276, § 33A, and the right to prompt arraignment. He signed waiver forms. The motion judge concluded that the second statement was not tainted by the first statement. However, the defendant argues that the motion judge reached this conclusion without conducting a proper analysis. We undertake such an analysis based on the judge's findings. See *Commonwealth* v. *Prater*, 420 Mass. 569, 581-582 (1995).

In Massachusetts, the taint of an illegally obtained statement is presumed to remain with subsequent statements, as Massachusetts does not follow *Oregon* v. *Elstad*, 470 U.S. 298, 318 (1985) (subsequent administration of Miranda warnings automatically removes remaining taint). Even so, "[i]t has never been the law that once the police fail in their obligations under *Miranda* all subsequent uncounseled statements by an accused must be excluded. The taint of a Miranda violation is not ineradicable." *Commonwealth* v. *Larkin*, 429 Mass. 426, 436-437 (1999). "According to our cases, the taint of an earlier Miranda violation may be removed if either (1) sufficient time has elapsed and there has been a sufficient break in the course of events to allow the conclusion that the taint has been dissipated [citation omitted], *or* (2) the pre-Miranda interview led to no inculpatory statement [emphasis original]." *Id.* at 437. Here, the defendant's first statement, acknowledging his link to the cocaine found in the apartment, was inculpatory. We therefore focus on the first line of analysis.[2] "The focus and ultimate goal of undertaking either or both lines of analysis is a determination of the voluntariness of the later confession." *Commonwealth* v. *Prater*, 420 Mass. at 581. These two lines of analysis are designed to help the court determine if the later statements made by a defendant are voluntary or the result of coercion. *Commonwealth* v. *Smith*, 412 Mass. 823, 830 (1992). "The burden of proof is on the govern-

_____

[2]In *Commonwealth* v. *Larkin*, *supra* at 437 n.9, the Supreme Judicial Court noted that it has never held that the Commonwealth must prove "*both* conditions have been met." We nonetheless devote some discussion to the second line of analysis as well. In addition to being defined as it was in *Larkin*, the second line of analysis has been characterized as involving a determination whether the defendant's decision to make a second statement is motivated by his sense of futility in view of the fact that he has already confessed.

ment to show such voluntariness by a preponderance of the evidence." *Commonwealth* v. *Mahnke*, 368 Mass. 662, 680 (1975), cert. denied, 425 U.S. 959 (1976).

In the "break in the stream of events" analysis, the focus "is on external constraints, continuing or new, which may have overborne the defendant's will." *Commonwealth* v. *Smith, supra.* At the time the defendant was taken in custody and returned to Franklin Street, he complained of difficulty in breathing, and an ambulance was called, but he refused treatment.[3] At the police station, the judge found that the defendant "appeared coherent, cooperative, and responsive, [and] appeared alert and awake at the time that he was provided his Miranda warnings and that he waived them." The motion judge did not credit the defendant's testimony that "he was so distraught or in distress that he was unable to appreciate the rights that were provided to him or the impact of consent to waive those rights." Moreover, we think the passage of almost two hours between the two statements and intervening circumstances, such as the interview away from the scene of Franklin Street at the police station and the involvement of different police personnel, constituted a "break in the stream of events sufficient to insulate the second [statement] from the circumstances of the first [statement]." *Commonwealth* v. *Prater, supra* at 582. In addition, the fact that the second statement was written further supports the conclusion that the second statement was insulated from the circumstances of the first statement.

The second line of analysis "looks more specifically to the effect of the previous [statement] on the defendant's will." *Commonwealth* v. *Smith, supra* at 830. "Fear, continuation of coercive effects, and a sense of futility of attempting to 'get the cat back in the bag' are the objects of the analysis." *Commonwealth* v. *Mahnke*, 368 Mass. at 688. The defendant's cooperative demeanor and almost matter-of-fact statement that he lived in the apartment, knew cocaine was there because it belonged to him, and sold cocaine from the apartment earlier that evening simply demonstrate that the second statement was not tainted or affected by the first. Moreover, the defendant appears to have been moti-

---

[3]At the suppression hearing, the defendant testified that in the course of apprehending him, the police beat him into unconsciousness. The motion judge did not credit that testimony, and rejected his claim that the police threatened to involve the Department of Social Services with his cousin's child.

vated to exonerate his cousin, with whom he shared the apartment. We conclude that "as a whole, the interview reveals a defendant whose decision to talk to the police was not based on a sense of futility brought on by having made previous statements." *Commonwealth* v. *Pileeki*, 62 Mass. App. Ct. 505, 510 (2004).

There is also no merit in the defendant's assertion that the police intentionally violated his right to use a telephone under G. L. c. 276, § 33A.[4] The motion judge ruled that the defendant properly was informed of that right through a printed form which was part of the Miranda warning form that the defendant signed at 12:21 A.M. Compare *Commonwealth* v. *Beland*, 436 Mass. 273, 284-285 (2002).

At trial, the detective acknowledged that the defendant requested the use of a telephone but was told that, because there was no telephone in the interview room or nearby, he would be able to use one at booking after the interview. The defendant underwent the booking process at 12:55 A.M. and testified that he used a telephone. Such use is well within the one-hour time period identified by G. L. c. 276, § 33A.[5]

The defendant has not met his burden to show that there was an intentional deprivation of his telephone rights. See *Commonwealth* v. *Scoggins*, 439 Mass. 571, 578 (2003). A defendant cannot seek a remedy under G. L. c. 276, § 33A, without this clear showing of intentionality. See *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 266 (1982) (police did not intentionally violate defendant's rights under statute when he asked for telephone call and was told he could use telephone after he made

---

[4]General Laws c. 276, § 33A, as amended through St. 1963, c. 212, provides as follows: "The police official in charge of the station or other place of detention having a telephone wherein a person is held in custody, shall permit the use of the telephone, at the expense of the arrested person, for the purpose of allowing the arrested person to communicate with his family or friends, or to arrange for release on bail, or to engage the services of an attorney. Any such person shall be informed forthwith upon his arrival at such station or place of detention, of his right to so use the telephone, and such use shall be permitted within one hour thereafter."

[5]"We have recently clarified that the telephone rights provided by G. L. c. 276, § 33A, are triggered by a defendant's formal arrest, not by the 'custodial' nature of any prearrest interrogation. *Commonwealth* v. *Rivera*, 441 Mass. 358, 374-375 (2004)." *Commonwealth* v. *Dagley*, 442 Mass. 713, 719 (2004), cert. denied, 544 U.S. 930 (2005).

his statement); *Commonwealth* v. *Espada*, 450 Mass. 687, 702 (2008) (because defendant was informed of his rights prior to giving statement, there was no intentional violation); *Commonwealth* v. *Carey*, 26 Mass. App. Ct. 339, 342-343 (1988) (no intentional violation where defendant asked to use telephone and was denied use until after inculpatory videotape had been made); *Commonwealth* v. *Rodriguez*, 58 Mass. App. Ct. 610 (2003) (evidence supported finding that police officers' failure to give proper notice required by G. L. c. 276, § 33A, was inadvertent, not intentional, and suppression not required). Additionally, when the denial of a defendant's telephone rights on the part of police was "not designed to gain inculpatory information," there is no intentional violation. *Commonwealth* v. *Leahy*, 445 Mass. 481, 490 (2005), quoting from *Commonwealth* v. *Johnson*, 422 Mass. 420, 429 (1996).

2. *Nolle prosequi.* The defendant was indicted for distribution of cocaine as a second offender, G. L. c. 94C, § 32A(*c*) and (*d*). Following the judge's finding on the charged crime of distribution and before the trial on the second offender portion of the distribution crime, the defendant orally moved to dismiss the second offender charge. The judge denied the motion. On the date scheduled for trial of the second offender portion, the prosecutor waived action on that charge and moved for sentencing. The judge asked whether the prosecutor intended to file a nolle prosequi, and the prosecutor stated she would file the necessary papers. The judge announced the sentences, but stayed their execution so as to allow the defendant to observe holidays with his children. Sentences were imposed on January 5, 2007.

In these circumstances, the defendant argues that a nolle prosequi entered on the second offender portion of the indictment, before a subsequent offender trial and without the consent of the defendant, functions as an acquittal of the entire indictment. The defendant's argument is fatally flawed by his mistaken conclusion that he was charged "with one crime and one crime only: distribution of cocaine as a subsequent offender." A subsequent offender offense does not constitute a freestanding crime, as explicated in *Commonwealth* v. *Fernandes*, 430 Mass. 517, 520 (1999), cert. denied sub nom. *Martinez* v. *Massachusetts*, 530 U.S. 1281 (2000):

"[W]e held that the repeat-offender provisions of the drug statute do not identify a freestanding crime. Rather they concern 'solely the sentence of a person convicted of a [current] violation . . . who has previously been convicted of at least one similar drug offense. The prior offense is not an element of the crime for which a defendant is charged but concerns the punishment to be imposed if he is convicted . . . [of the current offense] and the prior offense is proved.' (Footnote omitted.) *Bynum* v. *Commonwealth*, 429 Mass. 705, 708-709 (1999)."

The *Fernandes* case continues:

"If the repeat-offender statutes are sentence enhancement provisions only and do not identify a freestanding crime, it is not necessary that the second offense indictment meet the requirements of an indictment that charges a separate crime. The crime has been set forth in count A; count B simply notifies the defendant of a sentence enhancement. Thus, the counts for the current offense and for the repeat offense are viewed as parts of one indictment and charge only one crime with a sentence enhancement provision."

*Id.* at 520-521.

In the normal course of trying a repeat offender indictment, if a guilty verdict is reached on the current offense, a separate trial subsequently is held on the repeat offense. A guilty finding then will result in the imposition of an enhanced sentence.

While the power to exercise a nolle prosequi is absolute before trial, it is limited once trial has begun and will have the effect of an acquittal if exercised after that time without the consent of the defendant. See *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 18-19 (1923); Mass.R.Crim.P. 16(b), 378 Mass. 885 (1979). However, the power of the prosecutor to enter a nolle prosequi is revived after a verdict and remains until the imposition of sentence. *Dascalakis*, *supra* at 19, 20.

Here, because the prosecutor filed a nolle prosequi after the guilty finding on the underlying offense, the nolle prosequi had no effect of acquittal on the underlying offense. As it was filed before the imposition of sentence, it had the effect of eliminating only so much of the indictment that charged a repeat offense.

A nolle prosequi may be entered as to "any distinct and substantive part" of an indictment. *Commonwealth* v. *Massod*, 350 Mass. 745, 748 (1966). The prosecutor simply decided not to proceed with trial of the repeat offense or seek an enhanced sentence.[6]

3. *Lost evidence.* The defendant complains that photographs taken of evidence found in the search of the apartment and photocopies of the marked controlled purchase money were lost, violating his due process rights and warranting reversal of his distribution conviction. He claims that if the photographs, as well as the photocopies, show the money had been found in the apartment rather than on the defendant's person, the evidence tying the defendant to drugs would be weakened.

There was no evidence that the money, as opposed to the other evidence, actually was photographed.[7] The search warrant return listed the money as found in the apartment, but the evidence officer admitted that was an error. There was police testimony that the money was found on the defendant's person.

The defendant has the burden to establish a reasonable possibility based on "concrete evidence" that access to such evidence "would have produced evidence favorable to his cause." *Commonwealth* v. *Kee*, 449 Mass. 550, 554 (2007) (citations omitted). The thrust of the defendant's argument is the effect that the allegedly lost evidence "would" have on the credibility of the police. "A claim that the evidence 'could have' exonerated him is speculative at best and is not the equivalent of 'concrete evidence.' " *Id.* at 555, quoting from *Commonwealth* v. *Dinkins*, 440 Mass. 715, 718 (2004). "With or without the [allegedly lost evidence] the [judge] would have had to evaluate the police testimony." *Id.* at 557. The defendant fails to show any prejudice resulting from the allegedly lost evidence.

---

[6]While the docket indicates that the nolle prosequi was filed on the date sentence was imposed, the record clearly indicates that it was intended to be effective before imposition of sentence. Even viewing the nolle prosequi as effective after sentencing, it would be a nullity because the sentence stands as a final judgment, and the entry of nolle prosequi cannot be made after judgment. *Commonwealth* v. *Dascalakis, supra.*

[7]The photographs were lost because of a known and ongoing problem with the police department's computer system. There was no evidence that the photocopies had been lost, only testimony that an officer did not know their whereabouts.

4. *The* Melendez-Diaz *issue.* The defendant argues that, because three quantities of cocaine were presented to the grand jury but only two indictments were returned[8] and only two quantities were introduced in evidence at trial, "this set of facts presents an excellent illustration of why a live witness from the State Laboratory was needed to present this evidence, in order to give [the defendant] the opportunity to explore what happened with the drug evidence in this case." In his initial brief, dated June, 6, 2008, the defendant cites *Crawford* v. *Washington*, 541 U.S. 36 (2004), and the case of *Melendez-Diaz* v. *Massachusetts*, then pending in the United States Supreme Court and later issued on June 25, 2009. *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527 (2009). In *Melendez-Diaz*, the Supreme Court held that the admission of forensic science certificates as prima facie evidence of primary facts stated therein violates the confrontation clause of the Sixth Amendment to the United States Constitution. Relying on those cases, the defendant complains that a witness was needed to "explain the process by which one bag of drugs sold to Trooper Patterson turned into two bags." The *Melendez-Diaz* issue is raised for the first time on appeal and expanded in the defendant's reply brief; our review is therefore limited to whether admission of the drug certificates created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Rodriguez*, 67 Mass. App. Ct. 636, 641 (2006) (unobjected-to constitutional error is subject to review under substantial risk standard). Even if the more stringent standard of harmless beyond a reasonable doubt were applied, we would

---

[8]The defendant notes that the grand jury were presented with three bags of cocaine and three certificates of analysis, yet returned only two indictments in connection with the cocaine. The two indictments charged were (1) distribution of cocaine as a second offense, G. L. c. 94C, § 32A(*c*) and (*d*), and (2) trafficking in cocaine, G. L. c. 94C, § 32E(*b*)(2), in an amount more than twenty-eight grams, but less than one hundred grams. At trial, cocaine samples of 5.44 grams and 68.46 grams, respectively, were submitted in support of these indictments. The third quantity of 3.08 grams was not introduced in evidence and played no part in the proceedings at trial.

A police officer also testified that he weighed the narcotics. The defendant made much of the disparity between the officer's testimony that the weight of the block was approximately sixty grams and the fact that the drug certificate listed the weight as 68.16 grams. This argument was presented only within the context of the defendant's challenge to the chain of custody. There was never any contention that the weight necessary for trafficking was not met.

find the introduction of the drug certificates in this case to be harmless beyond a reasonable doubt. See note 10, *infra.*

At trial, an evidence officer testified that in two instances he had received packages of what appeared to be cocaine from other officers involved at the scene on Franklin Street. In both instances, defense counsel objected to the introduction of the cocaine and the State police laboratory drug certificates because the cocaine had not been authenticated (1) by the trooper who received it from the defendant or (2) by the officer who found the cocaine in a search of the apartment. Defense counsel asserted that there were no ties between the cocaine samples and the officers who originally had them. However, there was testimony in each instance from those officers that clearly linked the submission of the cocaine to the evidence officer. The evidence officer testified that each package was marked with a police property number and a control number assigned by the State police laboratory and that the accompanying drug certificate had the same control number.

The defendant's objections at trial only pertained to the chain of custody of the cocaine. Nothing appears in the evidence to show any break in that chain or a lack of credible testimony from the officers who were the links in that chain. The police sufficiently authenticated the drugs, and no error appears in their admission in evidence on chain of custody grounds. In any event, any weakness in that chain would go to the weight of the evidence, not its admissibility. Compare *Commonwealth* v. *Dessources*, 74 Mass. App. Ct. 232, 239 (2009), and cases cited.

Accordingly, the defendant erroneously invokes *Crawford* and *Melendez-Diaz* in seeking a "live witness from the State Laboratory . . . to explore what happened with the drug evidence." Such a State laboratory witness was not a link in the chain of custody and could not have had knowledge of either the source of the cocaine or its travel before submission for analysis. *Melendez-Diaz* simply states that: "The Sixth Amendment does not permit the prosecution to prove its case via *ex parte* out-of-court affidavits, and the admission of such evidence against Melendez-Diaz was error." *Id.* at 2542.[9]

In his reply brief, the defendant raises an argument more

---

[9]The Supreme Court concluded that the certificates of analysis in issue "are quite plainly affidavits."

pertinent to the holding in *Melendez-Diaz*, claiming that, absent the drug certificates, the Commonwealth did not establish that the substance was cocaine. However, this is not an instance where the Commonwealth proved its case entirely on the drug certificates. "Proof that a substance is a particular drug need not be made by chemical analysis and may be made by circumstantial evidence." *Commonwealth* v. *Dawson*, 399 Mass. 465, 467 (1987). See *Commonwealth* v. *Connolly*, 454 Mass. 808, 831-832 (2009). The police officers who seized the cocaine were trained and experienced in drug transactions, particularly those involving cocaine, and their unchallenged identification of the seized items as cocaine is evidence adding to the Commonwealth's proof. "[A] substance can be identified as a controlled drug as defined by G. L. c. 94C, § 31, through the testimony of experienced police officers." *Dawson, supra* at 466-467. The defendant signed a statement, which was admitted in evidence, in which he stated that the substance was cocaine. A police officer also testified that he weighed the drugs. See note 8, *supra*. In addition, the canine used in the search made a positive hit, which directly led the officers to the cocaine. The police also found drug paraphernalia, in particular, a scale. Finally, the focus of the defense supports a finding that there was no substantial risk of a miscarriage of justice. The defense did not concern the nature of the substance, but rather the chain of custody. Compare *Commonwealth* v. *Rodriguez, ante* 235, 244 (2009). In view of the uncontroverted evidence that the defendant was engaged in the drug trade, no substantial risk of a miscarriage of justice appears in the introduction of the drug certificates without the testimony of an analyst from the State police laboratory.[10]

*Judgments affirmed.*

MILKEY, J. (concurring). We conclude, inter alia, that the

---

[10]In view of the facts of this case, particularly all the evidence pertaining to the drug transactions, including the defendant's inculpatory statement, the canine "hit," and the police testimony about the transactions, even if the more stringent standard were applied, the error in admitting the certificates was harmless beyond a reasonable doubt. See *Commonwealth* v. *Connolly*, 454 Mass. 808, 832 (2009).

police did not violate the defendant's right to place a telephone call. I write separately to note that I join that conclusion only because I believe it is dictated by *Commonwealth* v. *Carey*, 26 Mass. App. Ct. 339, 342-343 (1988).

The detective who interrogated the defendant back at the station initially testified that the defendant made no request to exercise his right to make a telephone call. Consistent with that statement, he repeatedly denied trying to delay the defendant from exercising his telephone rights until after the interrogation was over. He explained that he would not have done that because, had the defendant asked to use a telephone, he simply would have let the defendant use his (the detective's) cellular telephone as he had allowed other suspects to do in the past. According to the detective, "[i]t was his right to use the phone."

Under further cross-examination, the detective admitted that the defendant did in fact ask to make a telephone call during the interrogation and that the defendant was told that — because there was no telephone in the room — he could not exercise his telephone rights until he was taken for booking. After the defendant provided a new confession, he was allowed to use a telephone within one hour of his arrival at the station.

Although the police delayed the defendant's use of the telephone, this does not establish that the police intentionally violated the defendant's telephone rights as those rights have been interpreted by *Commonwealth* v. *Carey*, *supra* at 343 (no violation of defendant's telephone rights where police informed him that he could make telephone call "when the booking was completed" and provided him telephone access within one-hour period referenced in G. L. c. 276, § 33A).[1] Suppression is therefore not required. See *Commonwealth* v. *Jackson*, 447 Mass. 603, 615 (2006), and cases cited.

---

[1]In G. L. c. 276, § 33A, the Legislature established an across-the-board requirement that the police make a telephone available to people held at the station within one hour of their arrival. In *Carey*, we concluded that the Legislature thereby created a one-hour "safe harbor" for the police (despite the fact that nothing in the statute directly speaks to what police are supposed to do if someone specifically asks to exercise his telephone rights while he is being interrogated but before the hour has expired). Thus, although the detective did not act in accordance with the norm he initially claimed to have been following (suspending an interrogation once someone specifically asks to use the telephone), that norm is not required by *Carey*.