After a jury trial in the District Court, the defendant, Sean Martin, was convicted of operating a motor vehicle while under the influence of intoxicating liquor, G. L. c. 90, § 24(1)(a )(1). On appeal, the defendant claims the judge erred in (1) permitting testimony regarding his conduct during the booking process; (2) allowing the introduction of an open eighteen-pack carton of beer found in his truck during an inventory search; (3) permitting a juror who appeared to be asleep to participate in deliberations; and (4) not instructing the jury on expert testimony and consciousness of guilt. The defendant also argues the evidence was insufficient to sustain his conviction. We affirm.
Background. We summarize the facts as the jury could have found them in the light most favorable to the Commonwealth. Commonwealth v. Latimore, 378 Mass. 671, 677 (1979). Around 1:35 A.M. on April 22, 2016, Officer Mark Wilkins was on routine patrol on Greenfield Street in Deerfield when he observed a pickup truck driven by the defendant traveling sixty miles per hour in a forty-five mile per hour zone.
Wilkins stopped the vehicle, approached the defendant, and asked him for his license and registration. The defendant produced his driver's license, but after "fumbling" through some papers, could not find his registration. Wilkins observed that the defendant's speech was "thick-tongue[d]" and his eyes were "glassy and somewhat bloodshot." Wilkins also detected a "moderate odor of alcohol" coming from the car. When asked if he had been drinking, the defendant initially stated that he had not, but then admitted he had consumed one beer. Based on these observations, Wilkins asked the defendant to perform field sobriety tests, to which he consented. Wilkins administered the tests upon the arrival of his partner, Officer Jennifer Bartak. Wilkins concluded that the defendant's performance demonstrated that he was intoxicated. The defendant was arrested and transported to the police station.
During the booking process, the defendant became uncooperative and confrontational. He was advised of his Miranda rights and although he indicated that he understood them, he refused to sign the form acknowledging that understanding. The officers also had difficulty obtaining the defendant's biographical information. The defendant challenged Wilkins's knowledge of the law and questioned whether Wilkins was on medication or drugs. At one point, he used his cellular telephone to call the police chief to ask him why he was being harassed. When he failed to reach the chief, the defendant called the State police and asked the trooper with whom he spoke about the protocols for OUI arrests and booking procedures. Wilkins noted that the defendant's speech had become "a little bit more thick-tongued or slurred" during the booking process, which took nearly two and one-half hours to complete. The entire procedure was video recorded and portions of the video were played for the jury.[2]
Meanwhile, Bartak conducted an inventory search of the defendant's vehicle. She found an open eighteen-pack of beer containing nine cans of Bud Light and three bottles of Miller High Life beer. The beer was cold.
Discussion. 1. Police testimony regarding the defendant's uncooperative behavior postarrest. During direct examination by the prosecutor, both Wilkins and Bartak described the defendant's behavior during the booking process. Defense counsel did not object to testimony regarding his demeanor. At one point, the prosecutor asked Wilkins whether he was able to obtain the defendant's biographical information, to which Wilkins responded that he was "unable to obtain much biographical information" because the defendant was "very uncooperative." When the prosecutor asked Wilkins if he could be more specific, defense counsel objected. The objection was sustained and the prosecutor moved on to another topic. The defendant now contends that all of the unobjected to testimony regarding his behavior at the police station amounted to improper comments on his postarrest silence and, as a result, should have been excluded.[3] See Commonwealth v. Gonsalves, 74 Mass. App. Ct. 910, 910-911 (2009). As the defendant acknowledges, in the absence of a timely objection, we review to determine whether there was error and, if so, whether that error created a substantial risk of a miscarriage of justice. See id. at 910 n.3.
"A defendant's postarrest silence in response to police questioning may not be used against him," even where that silence "is in connection with booking questions." Gonsalves, supra at 911. However, "a defendant who voluntarily speaks after receiving Miranda warnings ... has not remained silent at all," and such statements are generally admissible. Commonwealth v. Lodge, 89 Mass. App. Ct. 415, 418-419 (2016), quoting from Anderson v. Charles, 447 U.S. 404, 408 (1980).
Here, the defendant was advised of his Miranda rights and confirmed that he understood them. Contrary to the defendant's assertion, his refusal to sign the form indicating his understanding of his Miranda rights did not amount to an exercise of his right to remain silent. Also, testimony regarding Wilkins's general difficulty in obtaining biographical information as a result of the defendant's obstreperous conduct did not amount to a comment on the defendant's silence. Cf. Gonsalves, supra at 911 (prohibiting evidence of "a defendant's refusal to answer a booking question" [emphasis supplied] ). Lastly, the defendant's combative exchanges with the arresting officers and his attempts to contact other police officials were voluntary statements. As such, they were admissible. See Lodge, supra.
2. Admission of the open eighteen-pack carton of beer. As indicated, the police found an open eighteen-pack carton of beer containing a mixture of unopened cans and bottles of beer. Six beers were missing. The Commonwealth was permitted to introduce this evidence over the defendant's objection. The defendant contends, as he did at trial, that the probative value of this evidence was outweighed by the danger of unfair prejudice. Because the defendant lodged a timely objection, we review to determine whether there was error and, if so, whether the error was prejudicial. See Commonwealth v. Arroyo, 442 Mass. 135, 144 (2004). "[I]n weighing the probative value of evidence against any prejudicial effect it might have on a jury, we afford trial judges great latitude and discretion, and we uphold a judge's decision in this area unless it is palpably wrong." Ibid.
There is no question that the evidence was relevant because it made more probable the Commonwealth's contention that the defendant had been drinking alcohol. See Mass. G. Evid. § 401 (2018) ("Evidence is relevant if ... it has any tendency to make a fact more or less probable than it would be without the evidence ... and the fact is of consequence in determining the action"). And, while the evidence was prejudicial, it was not unduly so. "[T]he measure of prejudice is not whether the evidence simply is adverse to the party against whom it is offered." Commonwealth v. Kindell, 84 Mass. App. Ct. 183, 187-188 (2013). Indeed, the defendant has failed to identify any prejudice beyond the permissible adverse inference that he had consumed the missing beer. See Commonwealth v. Hilton, 398 Mass. 63, 66, 68 (1986). As such, we discern no error in the judge's decision to admit the evidence.
3. Inquiry as to whether there was a sleeping juror. During the morning session of the trial, the judge observed that one of the jurors was "repeatedly closing his eyes." The judge raised the issue with counsel and, even though the judge believed that the juror was concentrating on the evidence and not sleeping, he conducted a voir dire of the juror at the beginning of the afternoon session. The juror explained that he had rheumatoid arthritis for which he took medication, but he was "all right" and had not been sleeping. The juror further stated that he had "just [been] relaxing" when he closed his eyes and had heard all the testimony. The judge concluded that the juror's answers confirmed "what [he] thought was happening," that is, that the juror had merely been concentrating on the evidence. Both the prosecutor and defense counsel agreed that the juror had not been sleeping, and the juror participated in deliberations.
The defendant now claims that the judge's questioning of the juror was inadequate and that the juror should have been discharged. This argument is without merit. The judge acted promptly upon observing the juror, see Commonwealth v. Beneche, 458 Mass. 61, 78 (2010), and by doing so protected the defendant's rights to a fair trial. See Comonwealth v. Dancy, 75 Mass. App. Ct. 175, 181 (2009). Furthermore, both the prosecutor and defense counsel agreed that the juror had not been sleeping. Given these circumstances, the judge's decision to keep the juror was reasonable and did not constitute an abuse of discretion. See Commonwealth v. Ray, 467 Mass. 115, 138-139 (2014).
4. Jury instructions. The defendant contends that evidence of his belligerent attitude during the booking process was indicative of his consciousness of guilt and, therefore, the judge should have instructed the jury on the subject even though he did not request such an instruction. Even if the defendant's behavior during the booking process could be viewed by the jury as a reflection of his consciousness of guilt, which we doubt,[4] our cases do not require that a judge, on his or her own initiative, instruct the jury on consciousness of guilt. See Commonwealth v. Rosa, 73 Mass. App. Ct. 540, 551 (2009), quoting from Commonwealth v. Simmons, 419 Mass. 426, 436 (1995) (matter "is left to the sound discretion of the judge, and it will not be error if he or she chooses not to instruct on the subject in the absence of a request").
Next, the defendant contends that because Wilkins testified to his training and experience in administering field sobriety tests, the judge should have specifically instructed the jury that Wilkins was not providing expert testimony. Defense counsel did not request an instruction on this matter either, and we discern no reason for requiring the judge to give one sua sponte. See Commonwealth v. Muckle, 90 Mass. App. Ct. 384, 396 (2016) (jury instruction not required if not requested). There was no error.
5. Sufficiency of the evidence. "When analyzing whether the record evidence is sufficient to support a conviction, ... the relevant 'question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " Commonwealth v. Gallagher, 91 Mass. App. Ct. 385, 392 (2017), quoting from Commonwealth v. Latimore, 378 Mass. 671, 677 (1979) (emphasis original). Here, the Commonwealth was required to prove that the defendant "(1) operated a motor vehicle, (2) on a public way, (3) while under the influence of alcohol." Gallagher, supra. The defendant claims the evidence was insufficient to prove the third element. We disagree.
The evidence was more than sufficient to permit a rational jury to conclude beyond a reasonable doubt that the defendant's ability to operate a motor vehicle was impaired. "[T]he Commonwealth need not prove that the defendant was drunk, only that alcohol diminished [his] ability to operate a motor vehicle safely." Ibid. Here, the defendant was speeding, see Commonwealth v. Rarick, 87 Mass. App. Ct. 349, 353 (2015) ; he admitted to consuming at least one beer, see Gallagher, supra at 391; and the carton of cold beer found in his truck was missing up to six cans or bottles, see Hilton, 398 Mass. at 66, 68. Moreover, the police observed "classic symptoms of alcohol intoxication," including bloodshot and glassy eyes, the smell of alcohol, slurred speech, and inability to properly perform field sobriety tests. Gallagher, supra at 392-393. This evidence amply supported the jury's verdict.
Judgment affirmed.

The parties disagree as to whether the booking video was introduced in evidence or merely used as a chalk to help the jury understand the officers' testimony. We need not resolve this dispute as the question of how the video recording was viewed has no bearing on our analysis of the issues.

Wilkins provided additional details regarding the defendant's refusal to provide biographical information during cross-examination. Because this testimony was solicited by defense counsel, the defendant cannot complain of its prejudicial effect. Commonwealth v. Elder, 389 Mass. 743, 754 (1983).

"Consciousness of guilt instructions are permissible when there is an 'inference of guilt that may be drawn from evidence of flight, concealment, or similar acts.' " Commonwealth v. Stuckich, 450 Mass. 449, 453 (2008), quoting from Commonwealth v. Toney, 385 Mass. 575, 584 (1982).