Lu, John T., J.
On September 29, 2008, following a juiy trial, the defendant (Mr. Ocasio) was convicted of one count of trafficking cocaine in an amount greater than 100 grams. Mr. Ocasio now moves for a new trial alleging: (1) ineffective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article XII of the Massachusetts Declaration of Rights; and (2) violation of his rights under the Confrontation Clause of the Sixth Amendment of the United States Constitution based on the admission of a drug certificate of analysis without Mr. Ocasio having been provided with the opportunity to cross-examine the chemist.
The court determines that Mr. Ocasio received effective assistance of counsel. Trial counsel consulted with Mr. Ocasio and made a reasonable tactical decision to not elicit testimony on cross from a police officer that the officer thought that Mr. Ocasio was protecting someone. The defense strategy, focused on claiming that police lied, was not manifestly unreasonable. Trial counsel’s advice to Mr. Ocasio to testify was entirely reasonable. The remarks made by the prosecutor in closing had little, if any, impact on the juiy and did not create a substantial risk of a miscarriage of justice. Also, trial counsel’s disciplinary record did not affect Mr. Ocasio’s representation.
The admission of the drug certificate without Mr. Ocasio having the ability to confront the chemist, however, was not harmless beyond a reasonable doubt. Mr. Ocasio is entitled to a new trial because the *189 court does not conclude that the admission of the drug certificate was harmless beyond a reasonable doubt.
BACKGROUND
On June 13, 2006, State Trooper Michael Richards (Trooper Richards) stopped a car on Interstate 290 in Worcester for speeding. Mr. Ocasio was the passenger. After running the driver’s license information, Trooper Richards waited for back-up. After Trooper James O’Neil arrived, both troopers saw the occupants moving and shifting around. The troopers approached the car and smelled carpet deodorant and body spray.[1] The troopers also saw white powder on the ground outside the passenger-side window as well as on the passenger seat and floor. Police took Mr. Ocasio and the driver, the co-defendant Mr. Santiago-Celeste (Mr. Santiago-Celeste), out of the car. The troopers searched the car and found a large bag of what appeared to be cocaine in a void behind the glove compartment. The troopers arrested Mr. Ocasio and Mr. Santiago-Celeste.
Police took Mr. Ocasio and Mr. Santiago-Celeste to the Holden state police barracks where Officer Miguel Lopez (Officer Lopez) read them their rights in Spanish and then interviewed them. During Officer Lopez’s conversation with Mr. Santiago-Celeste, Mr. Santiago-Celeste claimed to be “the biggest drug dealer in Worcester.” Later, after being locked in a holding cell, Mr. Santiago-Celeste told Trooper Richards that all the cocaine in the car belonged to him. During Officer Lopez’s interview of Mr. Ocasio, Mr. Ocasio first claimed that the drugs were his but after being told of the potential penalty, he recanted and said that the drugs belonged to neither he nor Mr. Santiago-Celeste.
The officers searched Mr. Santiago-Celeste and found at least two cell phones that belonged to him as well as $1,781.00 in cash. State police searched the car at the barracks, and a second bag with a substance that resembled cocaine, larger than the first, was discovered deeper in the void behind the glove box. The second bag had a tear in it. The two bags from the glove compartment, samples of the white powder found on the passenger side floor, and on the ground outside the car’s window were submitted to the state laboratory for analysis. No police officers gave expert opinions that the substances were cocaine.
Mr. Ocasio retained trial counsel to represent him. Mr. Ocasio and Mr. Santiago-Celeste were tried together to a jury from September 19, 2008 through September 29, 2008. At trial, both Mr. Ocasio and Mr. Santiago-Celeste denied that there was cocaine in the car and also denied multiple statements attributed to them by testifying officers. The jury returned verdicts of guilty against both Mr. Ocasio and Mr. Santiago-Celeste on the charge of trafficking cocaine.
DISCUSSION
1. Motion for a New Trial Standard
Pursuant to Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001), a judge may allow a motion for a new trial “if it appears that justice may not have been done.” A judge may, in his or her discretion, rule on a motion for a new trial without an evidentiary hearing if no substantial issue is raised by the motion or affidavits. Commonwealth v. Wallis, 440 Mass. 589, 596 (2003), citing Mass.R.Crim.P. 30(c)(3). In determining whether a substantial issue is raised by the motion for a new trial, the court looks to the seriousness of the issue and the adequacy of the defendant’s showing on the issue. Commonwealth v. Denis, 442 Mass. 617, 629 (2004), citing Commonwealth v. Goodreau, 442 Mass. 341, 348 (2004). A defendant must make a sufficient factual showing to warrant a hearing. Commonwealth v. Raymond, 450 Mass. 729, 733-24 (2008), citing Commonwealth v. Britto, 433 Mass. 596, 608 (2001).
I. Ineffective Assistance of Counsel
A claim of ineffective assistance of counsel raises “an issue of constitutional importance” that readily qualifies as a serious issue. Denis, 442 Mass. at 629, quoting Commonwealth v. Licata, 412 Mass. 654, 661 (1992). Although the motions and supporting materials filed by the defendant do not need to prove the issues raised, they must at least contain sufficient credible information to cast doubt on the issue. Id. at 629. The court’s focus is on whether Mr. Ocasio has made a sufficient factual showing of trial counsel’s ineffective assistance to warrant an evidentiary hearing.
Where a new trial motion is based on ineffective assistance of counsel, the standard used to analyze such a claim is “whether there has been serious incompetency, inefficiency, or inattention of counsel— behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then typically whether it has likely deprived the defendant of an otherwise available, substantial ground of defense.” Commonwealth v. Watson, 455 Mass. 246, 256 (2009), quoting Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). The burden of proving entitlement to a new trial based on ineffective assistance of counsel rests on the defendant. Commonwealth v. Comita, 441 Mass. 86, 90 (2004). A defendant must show better work might have accomplished something material for the defense. Id., citing Commonwealth v. Acevedo, 446 Mass. 435, 442 (2006). Where a defendant challenges tactical decisions of his counsel, he must demonstrate the decision was “manifestly unreasonable” when made. Id., citing Commonwealth v. Martin, 427 Mass. 816, 822 (1998). Mere speculation, without more, is insufficient to establish ineffective representation. Id., citing Commonwealth v. Duran, 435 Mass. 97, 103 (2001). The defendant must show that the alleged error resulted *190 in “actual prejudice.” Commonwealth v. Urena, 417 Mass. 692, 699 (1994).
Mr. Ocasio alleges that trial counsel provided ineffective assistance because: (1) he failed to elicit testimony from Officer Lopez on cross about Officer Lopez’s belief that Mr. Ocasio was covering for someone else when admitting to ownership of the cocaine; (2) trial counsel failed to pursue available substantial defenses; (3) he unreasonably advised Mr. Ocasio to testify; (4) he failed to object to various statements made by the prosecutor in closing and failed to request a curative instruction; and (5) he was publicly reprimanded and temporarily suspended from the practice of law by the Board of Bar Overseers in 2006 and faces other potential disciplinary action. Mr. Ocasio has failed to meet his burden on each of these claims.
A. Failure to Elicit Testimony from Officer Lopez on Cross Examination
Mr. Ocasio alleges that trial counsel was ineffective for not eliciting testimony concerning a statement by Officer Lopez at a motion hearing that he thought Mr. Ocasio was “taking the rap for someone else” when he admitted ownership of the cocaine. Mr. Ocasio argues that his confession was the most damaging evidence against him and that trial counsel should have challenged it by eliciting Officer Lopez’s statement on cross examination. The Commonwealth argues that trial counsel’s strategy was reasonable in light of the limitations on trial counsel’s defense strategies imposed by Mr. Ocasio’s refusal to testify against Mr. Santiago-Celeste.
A majority of Mr. Ocasio’s arguments rest on post-conviction affidavits from Mr. Ocasio and appellate counsel. Although signed under penalty of perjury, they are self-serving, see Commonwealth v. Pike, 53 Mass.App.Ct. 757, 761 (2002), and the choice of deciding a motion for new trial on affidavits is left to the “sound discretion of the judge.” Commonwealth v. Cutts, 444 Mass. 821, 830 (2005).
“What witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, and what trial motions to make” are all tactical decisions that do not amount to ineffective assistance unless they were manifestly unreasonable. Commonwealth v. Hernandez, 63 Mass.App.Ct. 426, 431 (2005). In determining whether trial counsel’s decision was manifestly unreasonable, the court gives trial counsel’s tactical decisions due deference, and “does not ‘second guess competent lawyers working hard for defendants who turn on them when the jury happen to find their clients guilty.’ ” Commonwealth v. Street, 388 Mass. 281, 285 (1983), quoting Commonwealth v. Rondeau, 378 Mass. 408, 413 (1979).
Faced with Mr. Ocasio’s refusal to testify against Mr. Santiago-Celeste, trial counsel focused on convincing the jury that the statements made by the arresting officers were not credible. Trial counsel likely did not elicit Officer Lopez’s statement that he thought Mr. Ocasio was “taking the rap” for someone else because it could have been taken by the jury as evidence of a joint venture, showing that Mr. Ocasio had the requisite knowledge and willingness to act for Mr. Santiago-Celeste. Also, it would be inconsistent of trial counsel to ask the jury to discredit the testimony of the arresting officers and, at the same time, elicit testimony, an expert opinion no less, from Officer Lopez as evidence of Mr. Ocasio’s innocence. It is “mere speculation” whether the testimony would have bene-fitted Mr. Ocasio. See Commonwealth v. Watson, 455 Mass. 246, 256 (2009). The evidence suggests that trial counsel, after consulting with his client, reasonably weighed the benefits of eliciting the testimony from Officer Lopez with the potential harm to his client, considered his client’s unwillingness to implicate,Mr. Santiago-Celeste and decided to not elicit the testimony. Cf. Commonwealth v. Garcia, 66 Mass.App.Ct. 167, 172 (2006).
Finally, the proposed testimony would be of questionable admissibility. The court has not been advised of authority for the admission of what amounts to an expert opinion by Officer Lopez as to Mr. Ocasio’s credibility. Trial counsel’s tactical decision to not elicit the statement from Officer Lopez was not ineffective assistance of counsel.
B. Failure to Pursue Available Substantial Defenses
Mr. Ocasio also alleges that trial counsel provided ineffective assistance because counsel’s strategy resulted in a loss of three substantial defenses. First, Mr. Ocasio contends that trial counsel could have argued that the drugs belonged to Mr. Santiago-Celeste; second, trial counsel could have argued that Mr. Ocasio only said that the drugs were his because he was covering for Mr. Santiago-Celeste; and third, trial counsel could have argued that Mr. Ocasio had no knowledge of the drugs in the glove compartment and that the white substance on the car floor was carpet deodorant.
Appellate counsel argues that trial counsel argued for a conviction of possession only. While this is technically correct, trial counsel’s strategy is more accurately described as arguing for an outright acquittal, but allowing for the possibility that the jury might convict Mr. Ocasio of possession only.
As previously stated, a tactical error must be shown to be “manifestly unreasonable.” Commonwealth v. Donlan, 436 Mass. 329, 333 (2002). Because Mr. Ocasio refused to testify against Mr. Santiago-Celeste, trial counsel’s strategy was to attack the evidence and statements against Mr. Ocasio. Mr. Ocasio did not forfeit the defense of implicating Mr. Santiago-Celeste because of trial counsel; he lost it because he refused to testify against Mr. Santiago-Celeste. Trial counsel reasonably chose a defense that was available to him. Mr. Ocasio argues that he did not preclude trial counsel from implicating Mr. Santiago-Celeste entirely; trial *191 counsel could have suggested Mr. Santiago-Celeste’s culpability indirectly during cross examination. This argument is not persuasive. The court does not credit the suggestion that Mr. Ocasio authorized trial counsel to navigate such a course.
Also, to critique the performance of a criminal defense attorney at such a high level of scrutiny — to find counsel ineffective for not suggesting Mr. Santiago-Celeste’s culpability indirectly — would create wholly unrealistic expectations of criminal trial attorneys and would deter qualified attorneys from undertaking representation. It was reasonable for trial counsel to abandon the defense altogether without Mr. Ocasio’s direct testimony in support. Trial counsel presented a consistent defense strategy, under the circumstances, focused on discrediting the police. Cf. Commonwealth v. Scott, 430 Mass. 351, 357 (1999). Trial counsel’s tactical decision was not an unreasonable defense but merely an unsuccessful one. See Commonwealth v. White, 409 Mass. 266, 272 (1991).
1. Unreasonably Advising Mr. Ocasio to Testify
Mr. Ocasio argues that trial counsel was ineffective for unreasonably advising him to testify. He argues that his testimony denying the existence of drugs in the car contradicted trial counsel’s strategy of simple possession, and that trial counsel should not have advised him to testify because it would align him with the more culpable Mr. Santiago-Celeste. The Commonwealth argues that because Mr. Ocasio refused to testify against Mr. Santiago-Celeste, it was reasonable for trial counsel to have Mr. Ocasio corroborate Mr. Santiago-Celeste’s stoiy — that neither owned the car, that neither knew of the cocaine in the glove compartment, and that they were friends on a work-related trip to Lawrence.
The decision of whether to call a witness at trial is a tactical decision, Commonwealth v. Adams, 374 Mass. 722, 728 (1978), and, like all other tactical decisions made by trial counsel, it does not amount to ineffective assistance of counsel unless it was “manifestly unreasonable when undertaken.” See Commonwealth v. Newell, 55 Mass.App.Ct. 119, 128-29 (2002). However, the right to testify on one’s own behalf in a criminal case is fundamental. Commonwealth v. Degro, 432 Mass. 319, 335 (2000), citing Harris v. New York, 401 U.S. 222, 225 (1971). The decision is made by the defendant in consultation with his counsel. Id.
Nothing about Mr. Ocasio’s testimony denying knowledge of the drugs sufficiently contradicted trial counsel’s grudging concession, that the jury might find him guilty of possession, so as to even approach an unreasonable strategy. To the contrary this was an appropriate strategy.
Two months before trial, Mr. Ocasio met with trial counsel at his apartment to discuss the Commonwealth’s case against him. During their conversation, trial counsel explained that there was significant evidence against him and a possibility that the jury would credit the officers’ testimony and the Commonwealth’s evidence. Mr. Ocasio expressed concern with testifying and trial counsel properly advised that the decision of whether to testify was his alone. During trial, counsel advised Mr. Ocasio that it would be in his best interests to testify so that the jury could evaluate his credibility. See Commonwealth v. Garuti, 454 Mass. 48, 60 (2009) (affirming trial court’s decision to reject claims of inadequate consultation, poor preparation for trial testimony, and insufficient explanation of the implications of testifying). There are no facts suggesting or showing that Mr. Ocasio was prejudiced by his performance on the stand.[2]
Experienced criminal trial lawyers recognize that there can be significant advantage to calling a sympathetic defendant to the stand even in the face of overwhelming evidence. The testimony of a defendant is the primary means of establishing a defendant’s humanity. The court finds, based on its memory, that trial counsel accomplished this goal.[3]
It has long been established that, in this Commonwealth, “the jury has the power to bring in a verdict in the teeth of both law and facts.” Commonwealth v. Paulding, 438 Mass. 1, 28 (2002), citing Horning v. District of Columbia, 254 U.S. 135, 138 (1920) (Holmes, J.); see also Irwin A. Horowitz, Jury Nullification: An Empirical Perspective, 28 N.Ill.U.L.Rev. 425, (2008); Carrie Ullman, DC Bar opinion 320: How a Defense Attorney can Advocate for Her Client Without Encouraging Jury Nullification, 18 Geo.J.Legal Ethics 1097 (2005). Mr. Ocasio’s claim of ineffective assistance of counsel is meritless as trial counsel’s advice was not manifestly unreasonable at the time it was given.
2. Failure to Object to Prosecutor’s Closing Argument
Mr. Ocasio claims that trial counsel’s failure to object to various statements made by the prosecutor during closing argument amounted to ineffective assistance of counsel because the prosecutor misled the jury and unfairly prejudiced Mr. Ocasio. He identifies the following statements made during the prosecutor’s closing argument as improper: (1) that the defendants were “present the entire time and got to listen to all the evidence and then they take the stand”; and (2) that the defendants are the “biggest drug dealers in Worcester.”
As to the prosecutor’s first statement, Mr. Ocasio argues that the prosecutor, by stating the defendants were “present the entire time and got to listen to all the evidence and then take the stand,” impermissibly suggested that the jury should draw a negative inference from the defendant’s opportunity and decision to shape his testimony.[4] Mr. Ocasio cites Commonwealth v. Person, 400 Mass. 136, 139 (1987), in which the court found it improper for a prosecutor to state that because the defendant sat through all the *192 Commonwealth’s evidence, he was able to fabricate his story. The linchpin of the court’s ruling was that there was no evidence to support the prosecutor’s argument. In contrast, the prosecutor’s statement here was supported by evidence.
Closing arguments “must be ‘[w]ithin the bounds of the evidence and the fair inferences from the evidence.” Commonwealth v. Gaudette, 441 Mass. 762, 767 (2004), quoting Commonwealth v. Gilmore, 399 Mass. 741, 745 (1987). A prosecutor may, if there is a basis in the evidence introduced at trial, attack the credibility of a defendant on the ground that his testimony has been shaped or changed in response to listening to the testimony of other witnesses. Id.; see, e.g., Commonwealth v. Moore, 408 Mass. 117, 130-32 (1990). There was sufficient evidence at trial to support the prosecutor’s statement in closing that the defendants’ accounts should be doubted. There was testimony that both Mr. Ocasio and Mr. Santiago-Celeste admitted to ownership of the cocaine and then changed their accounts. Based on the evidence, both the prosecutor’s statement and trial counsel’s decision to not object were proper. Trial counsel’s election not to object to the prosecutor’s passing reference to the defendant’s ability to “listen to all the evidence and then take the stand,” made in the context of a nineteen-page closing argument, was reasonable.
As to the prosecutor’s second statement, Mr. Ocasio argues that the prosecutor knowingly misstated the evidence during closing arguments, which misled the jury and warrants a new trial. Three times he stated or suggested that both Mr. Ocasio and Mr. Santiago-Celeste “were the biggest drug dealers in Worcester.” These were misstatements of the evidence. The prosecutor may not use “closing argument to argue or suggest facts not previously introduced in evidence” or misstate the evidence. Commonwealth v. Dancy, 75 Mass.App.Ct. 175, 188 (2009), citing Commonwealth v. Storey, 378 Mass. 312, 324 (1979).[5]
In analyzing a claim of improper argument, the prosecutor’s remarks must be viewed in light of the entire argument, as well as in light of the judge’s instruction to the juiy and the evidence at trial. Id. at 190-91. Whether the improper arguments require reversal of the conviction depends on consideration of (1) whether the defendant seasonably objected; (2) whether the error was limited to collateral issues or went to the heart of the case; (3) what specific or general instructions the judge gave the jury which may have mitigated the mistake; and (4) whether the error, in the circumstances, possibly made a difference in the jury’s conclusion. Commonwealth v. Silva-Santiago, 453 Mass. 782, 807 (2009), citing Commonwealth v. Perez, 444 Mass. 143, 151 (2005). Because defense counsel did not object to the prosecutor’s argument, review is limited to whether there was a substantial likelihood of a miscarriage of justice. See Commonwealth v. Taylor, 455 Mass. 372, 381 (2009), citing Commonwealth v. Wright, 411 Mass. 678, 682 (1992).
Here, the prosecutor’s statements did not create a substantial likelihood of miscarriage of justice. The statements were not so misleading or inflammatoiy as to create a substantial likelihood of a miscarriage of justice. During trial, close questions commonly “arise as to whether the prosecutor has gone over the line between fair and improper argument. In such cases, we must and do recognize that closing argument is identified as argument, the jury understands that, instructions from the judge inform the juiy that closing argument is not evidence, and instructions may mitigate any prejudice in the final argument.” Commonwealth v. Judge, 420 Mass. 433, 452 (1995), citing Commonwealth v. Kozec, 399 Mass. 514, 517 (1987). The jurors in this case were similarly instructed.[6] See Commonwealth v. Kee, 449 Mass. 550, 560 (2007) (“[J]uiy instructions may mitigate any prejudice inherent in closing arguments”). The prosecutor identified the individual and unique admissions by Mr. Ocasio and Mr. Santiago-Celeste during his closing which reduced the possibility that the jurors improperly received the prosecutor’s statements. It is speculative whether the prosecutor’s statement made any difference to the juiy, especially in light of the evidence against Mr. Ocasio. The prosecutor’s remarks in closing did not create a substantial risk of a miscarriage of justice.
3. Trial Counsel’s Disciplinary Record and Alleged Ethical Violations
Mr. Ocasio notes that trial counsel was publicly reprimanded by the Board of Bar Overseers in 2006 and temporarily suspended from practicing law for two months between December of 2006 and Februaiy of 2007. Mr. Ocasio highlights a more recent Petition for Discipline dated May 20, 2009 although no findings have yet been made. Mr. Ocasio has not provided any evidence, nor has he even alleged that these infractions affected or contributed to trial counsel’s ability to effectively represent him. These violations and allegations do not establish that trial counsel’s representation in this case fell measurably below that which might be expected from an ordinaiy fallible lawyer. See Commonwealth v. Favella, 42 Mass.App.Ct. 354, 359-60 (1996) (that counsel entered into an unethical contingency fee arrangement did not establish that counsel’s representation was ineffective). Mr. Ocasio’s argument on this basis fails.
III. Admission of the Drug Certificate
Mr. Ocasio argues that the admission of the drug certificate, without the testimony of the analyst and the opportunity for Mr. Ocasio to cross examine the analyst, is an error warranting a new trial. Mr. Ocasio cites Melendez-Diaz v. Massachusetts, 129 S.Ct. 2527 (2009). In Melendez-Diaz, the Supreme Court ruled that analysts’ affidavits are “testimonial statements” and that “[a]bsent a showing that the analysts were *193 unavailable to testify at trial and that [a defendant] had a prior opportunity to cross examine them,” a defendant has a right to confront the analysts at trial. Id. at 2532. Here, there was no showing that the analyst was unavailable, and the defendant had not previously cross examined the analyst. Under Melendez-Diaz, the admission of the certificate of analysis was error.
1. Standard of Review
Where counsel fails to properly preserve a constitutional issue by objecting at trial, the court must consider whether the error created a substantial miscarriage of justice. Commonwealth v. Bly, 444 Mass. 640, 648 (2005). At the time of Mr. Ocasio’s trial, however, an objection to the admission of the drug certificate would have been futile because the judge had to follow Commonwealth v. Verde, 444 Mass. 279 (2005). Commonwealth v. Vasquez, 456 Mass. 350, 356 (2010). Since any objection would be in vain, the rationale for the substantial miscarriage of justice standard is not applicable. Id. at 358. Also, applying this standard would be fundamentally unfair. Id. at 359. The appropriate standard of review is harmless beyond a reasonable doubt, not substantial miscarriage of justice. Id. at 360.
2. The Admission of the Drug Certificate
“The essential question in analyzing harmlessness beyond a reasonable doubt is whether the error had, or might have had, an effect on the fact finder and whether the error contributed to or might have contributed to the findings of guilty.” Id., quoting Commonwealth v. Perrot, 407 Mass. 539, 549 (1990) (internal quotation marks omitted). To prove that the admission of the drug certificate was harmless beyond a reasonable doubt, the Commonwealth must establish that the properly admitted evidence negates any effect the improperly admitted evidence had on the juiy. Id. at 362, citing Commonwealth v. Tyree, 455 Mass. 676, 704 n.44 (2010), quoting Commonwealth v. Dagraca, 447 Mass. 546, 555 (2006).
In the months since Vasquez, the Supreme Judicial Court and the Appeals Court have decided more than two dozen cases applying the harmless beyond reasonable doubt standard to the admission of drug certificates. These cases discuss a myriad of factual issues that support a finding that the admission of the certificate, in this case, was not harmless beyond a reasonable doubt.
A common theme in cases in which the Appeals Court determined that the admission of the drug certificate was harmless is that the Commonwealth introduced additional evidence that spoke directly to the nature of the substance. See Commonwealth v. Villatoro, 76 Mass.App.Ct. 645, 651-53 (2010) (defendant testified that the substance was weed and a trained officer testified that the substance gave off an odor consistent with marijuana); Commonwealth v. Sullivan, 76 Mass.App.Ct. 864, 872-75 (2010) (in addition to testimony from a drug user and police officer, the officer performed field tests on the cocaine); Commonwealth v. Jones, 76 Mass.App.Ct. 1122, *3 (2010) (unpublished opinion pursuant to Rule 1:28) (defendant testified that the substance was cocaine); Commonwealth v. Cordes, 76 Mass.App.Ct. 1132, *6-8 (2010) (unpublished opinion pursuant to Rule 1:28) (drug addict testified that the effect the substance had on him was consistent with cocaine); Commonwealth v. Lebron, 76 Mass.App.Ct. 1131, *4-5 (2010) (unpublished opinion pursuant to Rule 1:28) (defendant testified that he used the substance and that it was heroin); Commonwealth v. Zagarella, 76 Mass.App.Ct. 1126, *4-10 (2010) (unpublished opinion pursuant to Rule 1:28) (highly trained officer testified that the substance had the odor and appearance of marijuana and the drug certificate was not emphasized at trial).
The decisions cited by the Commonwealth that pre-date Vasquez follow a similar reasoning. See Commonwealth v. Harris, 75 Mass.App.Ct. 696 (2009) (defendant signed a statement that the substance was cocaine, an experienced officer weighed the cocaine and testified to its nature, and a police dog made a positive identification); Commonwealth v. Williams, 76 Mass.App.Ct. 1111, *9 (Feb. 3, 2010) (unpublished opinion pursuant to Rule 1:28) (the cocaine was field tested); Commonwealth v. Anderson, 76 Mass.App.Ct. 1108, *6-8 (2010) (unpublished opinion pursuant to Rule 1:28) (officers testified to smelling an odor consistent with marijuana and the defense’s strategy was not to contest the nature of the substance, but rather, that the defendant had the drugs for personal use).
Where the Commonwealth did not conduct field tests or present evidence of the effect the drug had on the defendant and the defendant did not testify to the nature of the substance, the admission of the drug certificate was not harmless beyond a reasonable doubt. See Commonwealth v. Rodriguez, 456 Mass. 578, 592 (2010) (admission of the certificates was not harmless where officers did not perform a field test and the only evidence identifying the substance as cocaine was the drug certificates); Commonwealth v. Fluellen, 456 Mass. 517, 527 (2010) (admission of the drug certificates was not harmless even though the defense argued that the defendant was merely a cocaine user and not a dealer because even though the jury could have inferred the nature of the substance from the evidence presented, “the certificates made that inference inescapable”); Commonwealth v. Charles, 456 Mass. 378, 382-84 (2010) (the admission of the drug certificates was not harmless where the defense asked the jury to return a verdict of a lesser included offense and the defendant’s actions showed a consciousness of guilt because the judge did not permit the officers to give an opinion on the nature of the substance, field tests were not performed, and the substance did not give off an odor or present any other *194 distinguishing characteristic); Commonwealth v. Jones, _ Mass.App.Ct. _, *16-17 (June 18, 2010) (vacating a conviction for possession of cocaine where the officer who testified was not qualified to give his opinion on the nature of the substance and did not explain how his expertise allowed him to identify the substance, field tests were not performed, and no one witnessed the effects the substance had on someone using them).
In this case, the Commonwealth presented a significant amount of evidence potentially negating the effect the certificate of analysis had on the jury. Police testified that Mr. Ocasio initially claimed ownership of the cocaine. While at the barracks, the defendants assumed that the substance found in the car was cocaine. The defendants did not challenge the claim that it was cocaine or offer an alternative explanation. See Harris, 75 Mass.App.Ct. at 707 (2009). The Commonwealth also presented circumstantial evidence concerning the nature of the substance, including: testimony by officers, trained in narcotics transactions, that the substance was found in a hidden void behind the glove compartment where it is unlikely someone would store baking soda or the like; the substance’s cocaine-like texture; and the use of drug-masking agents such as carpet cleaner and body spray.
The circumstantial evidence, in addition to the other evidence admitted at trial, supports the inference that the substance was cocaine. See Vasquez, 456 Mass. at 360-61, quoting Commonwealth v. Dawson, 399 Mass. 465, 467 (1987) (“Proof that a substance is a particular drug need not be made by chemical analysis and may be made by circumstantial evidence”); Harris, 75 Mass.App.Ct. at 707 (“A substance can be identified as a controlled drug . . . through the testimony of experienced police officers”).
However, the evidence presented by the Commonwealth was insufficient to counteract the effect the drug certificate had on the jury because the certificate guarantees that the substance is cocaine “to a degree that virtually no amount of circumstantial evidence can.” Vasquez, 456 Mass, at 363-64. “Even if [the court] were to accept the proposition that the jury could conclude beyond a reasonable doubt that the substance was cocaine... there was simply no reason for the juiy to make a lay evaluation when they had a certificate of analysis stating that the substance was cocaine.” Commonwealth v. Todd, 76 Mass.App.Ct. 1136, *6 (June 4, 2010) (unpublished decision pursuant to Rule 1:28).
The drug certificate was the only evidence concerning the substance’s chemical nature. The Commonwealth did not introduce evidence that the troopers performed a field test on the cocaine, were involved in the creation of the certificate, or witnessed the effect on the defendants after ingestion. Also, the court did not find that the troopers were qualified to give their opinion on the nature of the substance. Without such evidence or testimony, which can be so overwhelming that it negates the effect the drug certificate, the court is unwilling to conclude that the certificate had no effect on the verdict. See Vasquez, 456 Mass. 350 (the drug certificates were not harmless beyond a reasonable doubt where the Commonwealth put forth the testimony of seven police officers who did not have expertise in chemical analysis, were not involved in the creation of the certificates, and did not perform field tests); Commonwealth v. Melendez-Diaz, 76 Mass.App.Ct. 229, 233 (2010) (the drug certificates were not harmless beyond a reasonable doubt where the Commonwealth could not produce any other material evidence proving the substance was cocaine); contrast Harris, 75 Mass.App.Ct. at 707. The admission, of the drug certificate was not harmless beyond a reasonable doubt.
ORDER
The defendant, Luis Ocasio’s, motion for a new trial (paper #36) is ALLOWED.

 There was testimony that masking agents such as carpet deodorant are often used to conceal the odor of drugs.

 The court’s memory of this trial is strong, and the court has reviewed the transcript of the defendants’ and Officer Lopez’s testimonies, as well as each of the closing arguments. The court finds that Mr. Ocasio’s testimony palpably improved his chances of prevailing. The court finds that trial counsel’s presentation of Mr. Ocasio’s testimony was competent.

 It is also the court’s memory that in rendering its verdict, the juiy was highly emotional. The court attributes this to the jury’s recognition of Mir. Ocasio’s humanity, accomplished by trial counsel’s presentation of Mr. Ocasio’s testimony, and evidence that the weight of the drugs required a heavy penalty.

 Nile prosecutor argued: “Don’t you think there’s going to be some inconsistencies? Compare that to the two codefen-dants who were present the entire time and got to listen to all the evidence and then they take the stand. Weigh that credibility with this credibility. Weigh that motive to lie and the bias with the bias and motive to lie, the bias over at this table.” (Page 43 of the closing arguments on Sept. 29, 2008.)

 The court does not foreclose the possibility that the argument was proper because the argument was a reasonable inference from Mr. Santiago-Celeste’s statement and all of the evidence connecting Mir. Ocasio to Mr. Santiago-Celeste and the dmgs.

 The court instmcted the juiy that “While important parts of the case, the opening statements and closing arguments are not evidence in the case. The only evidence in the case comes from the testimony of the witnesses that appeared before you and the exhibits that have been introduced into evidence. You are not to consider anything you heard in the opening or closing statements as evidence unless it materialized before you from the witness stand or through exhibits during the course of this trial. If a lawyer made reference to evidence that he or she said was produced during the course of this trial, and according to you jurors that evidence was not produced, then you must reject that statement of the lawyer.” (Contained at pages 12-13 of the court’s written jury instructions which were marked for identification and provided to the juiy.)